STEWART v FAIRLANE COMMUNITY MENTAL HEALTH CENTRE (ON REMAND)

Docket No. 191460. Submitted June 3, 1997, at Detroit. Decided September 16, 1997, at 9:00 A.M.

Carol Stewart brought an action in the Wayne Circuit Court against Fairlane Community Mental Health Centre, alleging violation of the Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, as a result of her alleged constructive discharge from employment. The defendant sought summary disposition, alleging that, through the defendant's personnel policies manual, the plaintiff had agreed to binding arbitration with regard to any issues relating to her employment. The court, Michael J. Callahan, J., denied the defendant's motion. The Court of Appeals, in lieu of granting the defendant's application for leave to bring an interlocutory appeal, entered an unpublished order on February 3, 1995, reversing the trial court's order and remanding the matter with instructions that the court enter an order directing the parties to proceed to arbitration. (Docket No. 180776). The Supreme Court, in lieu of granting leave to appeal, vacated the order of the Court of Appeals and remanded the matter to the Court of Appeals for plenary consideration. 450 Mich 943 (1995).

On remand, the Court of Appeals *held*:

The defendant's personnel policy manual did not create an enforceable arbitration agreement. An agreement or provision in an employee manual is not mutual or binding where, as between a private employer and a nonunion employee, an employer may unilaterally amend at any time every policy contained in its employee manual. In the absence of a binding contract to arbitrate, the defendant is not entitled to summary disposition.

Affirmed.

1. ARBITRATION — MASTER AND SERVANT — CONTRACTS.

An employer's personnel policy manual does not create an enforceable arbitration agreement with regard to employment-related issues where it is not a binding contract; an agreement or provision in an employee manual is not mutual or binding where, as between a private employer and a nonunion employee, the employer may unilat-

erally amend at any time every policy contained in its employee manual.

2. ARBITRATION — CONTRACTS — UNILATERAL REVOCATION.

Neither party to an arbitration agreement under the Michigan arbitration act may revoke the agreement without the other party's consent; a party's reservation of the right to change the agreement unilaterally at any time is inconsistent with the arbitration act (MCL 600.5011; MSA 27A.5011).

*Berkley, Mengel & Vining, P.C.* (by *Christopher E. Mengel* and *Guy C. Vining*), for the plaintiff.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Janice G. Hildenbrand* and *Barbaa H. Goldman*), for the defendant.

ON REMAND

Before: MACKENZIE, P.J., and NEFF and MARKEY, JJ.

PER CURIAM. Defendant appeals as of right from the trial court's November 1994 order denying its motion for summary disposition regarding plaintiff's cause of action under the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.;* MSA 17.428(1) *et seq.* In light of our Supreme Court's decision in *Heurtebise v Reliable Business Computers, Inc,* 452 Mich 405, 413-414; 550 NW2d 243 (1996), we affirm.

I

This is the second time that this Court has addressed the instant matter. The facts are not in dispute. Plaintiff is a registered nurse who began working at defendant's outpatient psychiatric facility in 1989. In 1993, defendant unilaterally amended its personnel policies manual that plaintiff was given in 1989 to include a binding arbitration provision, which states in pertinent part:

XI. BINDING ARBITRATION:

Pursuant to the Federal Arbitration Act (FAA) the following procedure and practice will serve as an agreement between the Centre and all employees to arbitrate any dispute which may arise during the period of employment with the Centre.

Both parties agree to the following:

Terms of agreement.

1. A signed statement agreeing to this will be executed between both parties prior to employment or prior to the enactment of this policy of which is a separately signed document from the contractual agreement.[1]

2. This agreement covers all terms, aspects, and potential disputes that may arise as a result of employment between the Centre and all employees unless otherwise stated below and includes claims that may be brought toward [sic] a third party such as fellow employees.

3. This agreement specifically covers all disputes that may occur that relate to the Age Discrimination in Employment Act (ADEA).

4. This agreement does however exclude all workers' compensation claims.

5. This agreement is considered mutual. In as much that this agreement binds the employee to arbitrate claims against the employer, it also obligates the employer to arbitrate the employee's claims.

6. It is clearly understood between all parties that no dispute may be litigated in a court of law and that arbitration of all covered by this agreement shall be final and binding.

7. This agreement binds both parties to waive all rights to a jury trial with regard to employment disputes covered by the agreement.

\*    \*    \*

---

[1] Notably, we find no separately signed document wherein plaintiff agreed to the binding arbitration policy, and defendant does not provide this document with its brief on appeal.

13. At the onset of this agreement all prospective employees shall be entitled to 7 days to consider whether to enter into this agreement and 21 days to revoke it.

The arbitration agreement was adopted on January 13, 1993, and signed by defendant's executive director.

Plaintiff signed a document entitled "Acknowledgement of Receipt of the Centre's Personnel Policies" acknowledging her receipt of the new policy manual containing the arbitration agreement, although she disputes that she actually received it. She also claims that she was induced to sign it in order to receive her paycheck. The document plaintiff signed, which was witnessed on January 27, 1993, did not contain language mentioning the new arbitration policy or indicating whether she agreed to the binding arbitration provision. Rather it contained the following disclaimer:

*Not a Contract of Employment:*
I understand the Personnel Policies Manual is *neither an "employment agreement," nor a "contract of employment."* It is a *guide* for the employer to provide, to the extent possible, a more uniform (though [sic] not precisely equal) approach to personnel practices and policies among Employees. [Emphasis added.][2]

---

[2] An unsigned "Agreement to Binding Arbitration" allegedly found in plaintiff's personnel file contained the same language as in the "Acknowledgment of Receipt of the Centre's Personnel Policies" but also added a second paragraph that stated as follows after the subheading "Not a Contract of Employment":

Therefore, any failure by Fairlane Community Mental Health Centre to strictly adhere to the Personnel Policies is not a "breach of contract," actionable in a court of law or equity. Therefore, I agree to the specific terms of the Binding Arbitration policy of the Centre's Personnel Policies Manual. I further understand that I have 7 days to consider whether to enter into this agreement and 21 days to

According to plaintiff's complaint, in mid-1993, plaintiff became aware that members of defendant's nonmedical staff were putting together and distributing medication without supervision and possibly breaking the law with respect to the dispensing of prescription drugs. When plaintiff informed her superiors of her concern and the fact that these activities should be reported to the proper authorities, plaintiff was told that her position may be compromised. In February 1994, plaintiff refused to prepare medication for a patient, despite her supervisor's orders, because the medication order needed physician approval and a nonmedical staff member could not administer the medication. Instead, she consulted a physician, who altered the medications, and then gave them to her supervisor to administer to the patient. Plaintiff was thereafter suspended for two weeks for "unwillingness to obey a directive by [her] supervisor" and was placed on disciplinary probation for six months. When defendant refused to return plaintiff to work without the disciplinary conditions, plaintiff considered herself constructively discharged.

In April 1994, plaintiff filed her complaint alleging a violation of the WPA. In response, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(7) claiming that, through defendant's personnel policies manual, plaintiff had agreed to binding arbitration regarding any issues related to her employment. Rejecting defendant's motion, the trial court found that the arbitration provision did not

---

revoke it. I further understand that the execution of this agreement *may* be a condition of my employment with the Centre.

apply to the statutorily created tort alleged in plaintiff's complaint.[3]

Defendant filed a timely application for leave to bring an interlocutory appeal. Rather than grant leave, this Court, in an unpublished order entered February 3, 1995 (Docket No. 180776), reversed the trial court's order and remanded the case with instructions that the trial court enter an order directing the parties to proceed to arbitration, citing this Court's decision in *Heurtebise v Reliable Business Computers, Inc*, 207 Mich App 308; 523 NW2d 904 (1994). Plaintiff sought leave to appeal this Court's order to the Michigan Supreme Court. In a December 19, 1995, order, 450 Mich 943 (1995), the Supreme Court, in lieu of granting leave to appeal, vacated this Court's order and remanded the case to this Court for plenary consideration.[4]

II

Defendant's sole issue on appeal is whether the arbitration agreement in the personnel policies manual is enforceable with regard to plaintiff's claim under the WPA. We believe that it is not enforceable but for different reasons than those cited by the trial court.

As a preliminary matter, we review de novo the trial court's ruling regarding summary disposition. *Guerra v Garratt*, 222 Mich App 285, 288; 564 NW2d 121 (1997). We must accept as true the plaintiff's well-

---

[3] At the hearing regarding defendant's motion for summary disposition, the court also granted plaintiff's motion to amend her complaint. The first amended complaint, filed October 24, 1994, added counts alleging violation of public policy and defamation. Neither of these counts is before this Court on appeal.

[4] On remand, the case was given a new Docket Number: 191460.

pleaded factual allegations, construing them in the plaintiff's favor, and consider the pleadings and other documentary evidence to determine if there is a genuine issue of material fact. *Id.* at 289. If no facts are in dispute and reasonable minds could not differ regarding the legal effect of those facts, however, the question whether the plaintiff's claim is barred presents a question of law for the court. *Id.*

A

The question whether an employee may validly waive her right to a judicial forum with respect to pursuing a claim under the WPA is an issue of first impression in Michigan. The Supreme Court in *Heurtebise*, 452 Mich 413-414, addressed this question in the civil rights context, and we believe that the same analysis applies to this WPA case.

In *Heurtebise*, the plaintiff filed suit against her employer alleging she had been unlawfully terminated from her employment in violation of the Michigan Civil Rights Act (CRA), MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* 452 Mich 408. The plaintiff, a woman, claimed that she and her male co-worker took longer than the permitted one-hour lunch periods while working together on a project. After returning from a working lunch that lasted over an hour, she was terminated, but her male co-worker was not. The plaintiff filed suit alleging unlawful gender discrimination. The defendant filed its motion for summary disposition seeking, in part, to compel arbitration and stay the proceedings on the basis of a written acknowledgment that the plaintiff signed. The acknowledgment stated that she had received the defendant's employee handbook and she agreed to be

bound by its terms and policies. *Heurtebise*, 452 Mich 408-409. The handbook provided that all disputes involving money damages would be resolved by final and binding arbitration. *Id.* at 409, n 3.

Refusing to enforce the arbitration agreement because it was against public policy and because the other clauses in the handbook made the arbitration provision ambiguous, the trial court denied the defendant's motion. On appeal, this Court reversed the order of the trial court. *Heurtebise*, 207 Mich App 310-312. Without the benefit of the defendant's entire policy manual, this Court found that the plaintiff signed the acknowledgment regarding the arbitration agreement even though mutual assent was not required, citing *In re Certified Question*, 432 Mich 438; 443 NW2d 112 (1989). *Heurtebise*, 207 Mich App 311. Further, this Court found that the "[p]laintiff's argument that the handbook specifically states that it does not create an enforceable contract is misguided. The provision plaintiff relies on addresses the at-will nature of plaintiff's employment, not the handbook in its entirety." *Id.* at 311. This Court also found that public policy did not prohibit the enforcement of a valid arbitration agreement in matters involving civil rights questions. *Heurtebise*, 452 Mich 411-412, citing *Heurtebise*, 207 Mich App 310-311.

In reversing the decision of the Court of Appeals, the Michigan Supreme Court found that the parties were not bound by a valid arbitration agreement. "It is undisputed that an arbitration provision is unenforceable if it is not a binding contract." *Heurtebise*, 452 Mich 413; accord *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156, 161; 570 NW2d 271 (1997). The Supreme Court reviewed the opening

statement in the defendant's employee handbook, which stated:

> This document is intended to establish and clarify certain employment policies, practices, rules and regulations (hereinafter collectively referred to as "Policies") of RELIABLE BUSINESS COMPUTERS, INC., (hereinafter referred to as the "COMPANY"). . . . *It is important to recognize and clarify that the Policies specified herein do not create any employment or personal contract, express or implied,* nor is it intended nor expected that the information provided in this document will provide sufficient detail to answer any and all questions which may arise. NOTWITHSTANDING ANY OF THE SPECIFIC POLICIES HEREIN, EACH EMPLOYEE HAS THE ABSOLUTE RIGHT TO TERMINATE HIS/HER OWN EMPLOYMENT AT ANY TIME, WITHOUT NOTICE, AND FOR ANY REASON WHATSOEVER, AND THE COMPANY HAS THE SAME RIGHT.
>
> From time to time, the COMPANY specifically reserves the right, and may make modifications to any or all of the Policies herein, at its sole discretion, and as future conditions may warrant. . . .
>
> \*     \*     \*
>
> . . . Upon receipt, all employees will sign the Employee Acknowledgement [sic], acknowledging receipt of this document. [Emphasis added.] [*Heurtebise,* 452 Mich 413-414.]

Without more, the Supreme Court set forth its findings and conclusions:

> This demonstrates that the defendant did not intend to be bound to any provision contained in the handbook. *Consequently, we hold that the handbook has not created an enforceable arbitration agreement with respect to this dispute.* We note that the above opening statement was not part of the record before the Court of Appeals. Had the Court of Appeals been able to examine the entire handbook, we are confident that it would have reached the same conclusion. We hold that the defendant was not entitled to summary disposition. [*Id.* at 414. Emphasis added.]

Notably, the majority opinion did not address whether private employers can require employees, as a condition of employment, to waive their rights to pursue any future civil rights claims in a judicial forum. Nevertheless, Justice CAVANAGH, the author of the majority opinion, opined that the right to pursue civil rights violations is of the highest priority, and the state constitution, as well as longstanding public policy, guaranteed direct access to a judicial forum in civil rights cases, despite an otherwise enforceable arbitration agreement. *Id.* at 414-438;[5] see also *Rushton, supra* 158-164.

B

Applying the Supreme Court's opinion in *Heurtebise* to the case at bar, we must reach the same conclusion with respect to plaintiff's WPA claim: defendant's personnel policy manual did not create an enforceable arbitration agreement.[6] *Heurtebise*, 452 Mich 414.

---

[5] Justices LEVIN and MALLETT concurred with Justice CAVANAGH's entire opinion, but Justice BOYLE, joined by Chief Justice BRICKLEY and Justices RILEY and WEAVER, concurred only with the majority's analysis and conclusion that the handbook language at issue did not create a valid agreement to arbitrate civil rights claims. They expressed no opinion, however, regarding whether or when an agreement to arbitrate a civil rights claim may be enforceable. *Id.* at 438-439.

[6] We reject defendant's assertion that *Carlson v Hutzel Corp of Michigan*, 183 Mich App 508, 513-515; 455 NW2d 335 (1990), is controlling because *Carlson* involved a *Toussaint*-style wrongful discharge claim, which is a common-law action, not a statutory claim as in the instant case. See *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980). Moreover, this Court's focus in *Carlson* was on whether an employer may unilaterally change written policies to include a binding arbitration procedure without first obtaining the employee's consent, which is not of concern to us in this case. Thus, we are unpersuaded by *Carlson*.

First, in January 1993, plaintiff signed a document acknowledging that she received a copy of defendant's revised personnel policies manual that contained, in bold-faced type, the words *"Not a Contract of Employment"* and specifically stated that the manual is neither an "employment agreement" nor a "contract of employment." The acknowledgment also noted that the personnel policies may be amended from time to time. "This demonstrates that the defendant did not intend to be bound to any provision contained in the handbook," *Heurtebise*, 452 Mich 414, even though the arbitration provision referred to itself as a "mutual" agreement. We cannot conclude that an agreement or provision is mutual or binding where, as between a private employer and a nonunion employee, an employer may unilaterally amend at any time every policy contained in its employee manual. In the absence of a binding contract to arbitrate, defendant is not entitled to summary disposition. *Id.*

Notably, the Supreme Court also believed that this Court's reliance on *In re Certified Question, supra,* which held that an employer could *unilaterally* change a written policy, was misplaced. See *Heurtebise*, 207 Mich App 311. Under the Michigan arbitration act, neither party to an arbitration agreement can revoke the agreement without the other party's consent, MCL 600.5011; MSA 27A.5011,[7] which

---

[7] MCL 600.5011; MSA 27A.5011 states, in pertinent part:

Neither party shall have power to revoke any agreement or submission made as provided in this chapter without the consent of the other party; and if either party neglects to appear before the arbitrators after due notice, the arbitrators may nevertheless proceed to hear and determine the matter submitted to them upon the evidence produced by the other party.

is contrary to the defendant's reserving its right to change its employment policies at any time. *Heurtebise*, 452 Mich 411, n 5. We agree that defendant's reservation is inconsistent with the Michigan arbitration act.

Second, although the record is silent regarding why plaintiff did not sign the acknowledgment sheet entitled "Agreement to Binding Arbitration" that was attached to her brief on appeal, her failure to sign is pivotal. Indeed, this acknowledgment was identical to the one she did sign except that the headings on the documents differed and the one plaintiff signed made no reference to the arbitration agreement. Further, the unsigned acknowledgment states that the employee had seven days to consider whether to enter into the binding arbitration agreement. Given that plaintiff, unlike the plaintiff in *Heurtebise*, did not sign the acknowledgment agreeing to the employer's new binding-arbitration policy set forth in the revised manual, we believe that defendant is in a weaker position to attempt enforcement of the arbitration provision than was the defendant in *Heurtebise*.

Third, although *Heurtebise* addressed the issue of enforcing a binding arbitration policy in the employment setting to resolve civil rights claims, we believe that the same analysis applies to plaintiff's WPA claim. Case law supports the conclusion that the CRA and the WPA protect similar statutorily recognized interests and deserve like treatment. For example, in *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982), our Supreme Court recognized that an exception to the rule of at-will employment exists where the reasons for discharging an

employee are so contrary to public policy as to be actionable at law. The Court stated: "Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id.* In support of this proposition, the Court cited the CRA, MCL 37.2701; MSA 3.548(701), the Handicappers' Civil Rights Act (HCRA), MCL 37.1602; MSA 3.550(602), the Occupational Safety and Health Act, MCL 408.1065; MSA 17.50(65), and the WPA, MCL 15.362; MSA 17.428(2). *Suchodolski, supra* at 695, n 2.

Moreover, in determining that the Legislature that drafted the WPA in 1980 expected that litigants under the WPA would retain the right to a jury trial, particularly given that the same right was preserved under the CRA and the HCRA, this Court in *Anzaldua v Band,* 216 Mich App 561, 580; 550 NW2d 544 (1996), found that

> [t]he WPA bears substantial similarities to Michigan civil rights statutes under which the right to a jury trial is retained. Actions under the WPA are analyzed using the "shifting burdens" framework utilized in retaliatory discharge actions under the CRA. *We also note that the* WPA is similar to Michigan's civil rights statutes in that all three acts may be broadly characterized as civil rights acts, all three appear directed at protecting employees from wrongful treatment by employers, and actions brought under each of the three acts involve similar factual questions of employer motivation. [Emphasis added (citations omitted).]

Finally, in concluding that the "continuing violations doctrine" applies to claims filed not only under title VII of the federal 1964 Civil Rights Act, 42 USC 2000e *et seq.*, the CRA, and the HCRA but also under the

WPA, thereby thwarting the defendant's statute of limitations defense, this Court in *Phinney v Perlmutter*, 222 Mich App 513, 546; 564 NW2d 532 (1997), made the following comparisons:

> First, like title VII of the 1964 Civil Rights Act, the WPA is a remedial statute that is to be liberally construed in favor of the persons intended to be benefited. Second, the injured party in a WPA case is often an employee who fears reprisal. Finally, like acts of discrimination based on race, gender, or handicap, acts of discrimination based on retaliatory animus may occur in a manner that makes it difficult to state the precise date of their occurrence. Accordingly, we hold that the continuing violations doctrine applies to claims under the WPA. [Citations omitted.]

Accord *Sumner v Goodyear Tire & Rubber Co*, 427 Mich 505, 510; 398 NW2d 368 (1986).

We find no grounds for distinguishing actions under the WPA from civil rights actions under the CRA for purposes of applying *Heurtebise*. Accordingly, we hold that defendant's policy manual containing an arbitration provision does not create an enforceable arbitration agreement in the absence of a binding contract. *Heurtebise*, 452 Mich 414. Also, like the majority in *Heurtebise*, we save for another day the public policy issue whether defendant, as a condition of employment, can require its employees to waive prospectively their rights to pursue WPA claims in a judicial forum. *Id.* at 407-408, 414.

Affirmed. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.