BURCHETT v RX OPTICAL

Docket No. 196681. Submitted January 13, 1998, at Grand Rapids. Decided
        October 9, 1998, at 9:15 A.M. Leave to appeal denied 459 Mich ___.

Lisa and John Burchett and their minor son, Jacob Burchett, by his
next friend, Lisa Burchett, brought an action in the Kalamazoo Cir-
cuit Court against Rx Optical, Lisa Burchett's former employer. The
plaintiffs alleged that the defendant terminated Lisa Burchett's
employment after she went on disability for a medical condition
related to her pregnancy with Jacob Burchett and after she com-
plained to the Michigan Department of Labor that the defendant
was docking her pay for mistakes made on the job. The plaintiffs
alleged that the termination violated the Whistleblowers' Protection
Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, the Civil
Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, the
Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA
3.550(101) *et seq.*, and the Family and Medical Leave Act (FMLA), 29
USC 2601 *et seq.* John Burchett claimed loss of consortium, and
Jacob Burchett claimed that the defendant's actions caused Lisa
Burchett to suffer stress while pregnant, resulting in the premature
birth and injury of Jacob Burchett. The defendant moved for sum-
mary disposition. The court, Philip D. Schaefer, J., denied the
motion with respect to Lisa and John Burchett, but granted the
motion with respect to Jacob Burchett. The parties settled the
claims of Lisa and John Burchett. Jacob Burchett, by his next
friend, appealed the order summarily dismissing his claims under
the CRA, the HCRA, and the WPA.

    The Court of Appeals *held*:

    1. Jacob Burchett cannot maintain a cause of action under the
CRA for damages for injuries allegedly sustained as a result of the
alleged violation of Lisa Burchett's civil rights. The language of sub-
section 801(1) and § 202 of the CRA indicate legislative intent that
only the person whose civil rights were violated in a given case
may bring an action under the CRA.

    2. Jacob Burchett cannot maintain a cause of action under the
HCRA for damages for injuries allegedly sustained as a result of the
alleged violation of Lisa Burchett's rights under the HCRA. The pur-
poses and goals of the HCRA are the same as those of the CRA, and

language in the HCRA similarly indicate legislative intent that only the person whose rights under the HCRA were violated in a given case may bring an action under the HCRA.

3. Jacob Burchett cannot maintain a cause of action under the WPA for damages for injuries allegedly sustained as a result of alleged retaliatory actions taken against Lisa Burchett. Although the WPA has purposes and goals that are distinct from those of the CRA and the HCRA, all three acts are given like treatment. Jacob Burchett cannot maintain an action under the WPA for the same reasons that he cannot maintain an action under the CRA and the HCRA.

Affirmed.

NEFF, P.J., concurring in part and dissenting in part, stated that Jacob Burchett cannot maintain an action under the WPA, but should be allowed to proceed under the CRA and the HCRA. Regardless of whether Jacob Burchett's action under the CRA and the HCRA is derivative or independent of his mother's action under the CRA and the HCRA, nothing in the CRA and the HCRA precludes Jacob Burchett's claim.

1. CIVIL RIGHTS — CIVIL RIGHTS ACT — HANDICAPPERS' CIVIL RIGHTS ACT — INFANTS.

An action under the Civil Rights Act or the Handicappers' Civil Rights Act may be brought and maintained only by those whose rights under either act are violated; an infant who claims injury only from discriminatory conduct directed at its mother while pregnant with the infant cannot maintain an action under either act (MCL 37.1101 et seq., 37.2101 et seq.; MSA 3.550[101] et seq., 3.548[101] et seq.).

2. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — INFANTS.

An action under the Whistleblowers' Protection Act may be brought and maintained only by those employees who report violations or suspected violations of law by their employers; an infant who claims injury only from retaliatory conduct directed at its mother while pregnant with the infant cannot maintain an action under the act (MCL 15.361 et seq.; MSA 17.428[1] et seq.).

*Durant, Piper & Sorei* (by *William F. Piper*), for the plaintiff.

*Mary E. Delehanty*, for the defendant.

Before: NEFF, P.J., and SAWYER and MURPHY, JJ.

Murphy, J. Plaintiff appeals as of right from the order granting in part and denying in part defendant's motion for summary disposition. We affirm.

This case arises out of Lisa Burchett's termination of employment as an optician with defendant. However, this appeal only addresses the claims involving plaintiff's son, Jacob. Lisa began working at Rx Optical in 1992. In December 1994, she became pregnant and informed her supervisor. On January 1, 1995, Lisa received a paycheck from which defendant had deducted money pursuant to its policy that its opticians would be responsible for mistakes made on accounts. On January 4, 1995, plaintiff contacted the Michigan Department of Labor to report defendant's policy of requiring opticians to reimburse defendant for mistakes that they made on certain accounts. Upon discovering that defendant's policy was illegal, Lisa informed both the owner and the president of Rx Optical. That same day, Lisa experienced vaginal bleeding and her doctor instructed her to go home. The next day, she was placed on a two-week disability leave; however, before the end of this two-week period she was terminated from her job for allegedly having a bad attitude.

On March 16, 1995, Lisa and John Burchett, her husband, filed an action alleging that Lisa's termination violated the Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.; MSA 17.428(1) et seq., the Civil Rights Act (CRA), MCL 37.2101 et seq.; MSA 3.548(101) et seq., the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 et seq.; MSA 3.550(101) et seq., and the Family and Medical Leave Act (FMLA), 29 USC 2601 et seq. John Burchett alleged that because of Lisa's termination, he suffered loss of

consortium. Following the premature birth of their son, Jacob, the Burchetts amended their complaint to add Jacob as a party, alleging that defendant's actions caused Lisa to suffer stress, which resulted in Jacob's premature birth and associated injuries.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Although plaintiff may very well have had considerable problems establishing that defendant's alleged violations of the statutes proximately caused the alleged injuries to Jacob, the trial court did not reach the issue of proof. Rather, the trial court granted the motion with respect to the claims involving Jacob under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). The trial court denied defendant's motion for summary disposition with respect to John and Lisa Burchett's claims; however, the parties settled those claims after the trial court's order. Plaintiff appeals from the trial court's dismissal of Jacob's claims.

We review de novo a trial court's decision to grant a motion for summary disposition. *Citizens Ins Co v Bloomfield Twp*, 209 Mich App 484, 486; 532 NW2d 183 (1995). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim and only permits consideration of the pleadings. *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). A trial court should grant a motion for summary disposition under MCR 2.116(C)(8) only where a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.*

Plaintiff argues that Jacob should be allowed to maintain a cause of action under the CRA, the HCRA, and the WPA. Plaintiff does not challenge the trial court's decision with respect to the FMLA. The fundamental purpose of statutory construction is to discover and give effect to the intent of the Legislature. *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 355; 564 NW2d 519 (1997). Once discovered, the Legislature's intent must prevail, any existing rule of construction to the contrary notwithstanding. *Id.* Where reasonable minds may differ about the meaning of the statute, we look to the objective of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the Legislature's purpose. *Id.*

Although we appreciate the remedial nature of these acts and recognize that appellate courts have consistently construed these acts liberally, see *Chmielewski v Xermac, Inc*, 457 Mich 593; 580 NW2d 817 (1998) (the HCRA); *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998) (the WPA); *Reed v Michigan Metro Girl Scout Council*, 201 Mich App 10, 15; 506 NW2d 231 (1993) (the CRA), we are not prepared to say that the Legislature, by its adoption of these acts, intended to create a cause of action for physical injuries to an infant, allegedly resulting from a stress-induced premature birth caused by unlawful employment discrimination directed at the infant's mother.

We first address whether Jacob can maintain a cause of action under the CRA. In *Eide v Kelsey-Hayes Co*, 431 Mich 26; 427 NW2d 488 (1988), our Supreme Court addressed a distinctly different question. In that case, the Court addressed whether a derivative cause

of action for loss of consortium is precluded by the CRA. *Id.*, 28. According to the majority in *Eide*, "a claim for loss of consortium is simply one for loss of society and companionship," which needs no independent statutory authority for it to be brought. *Id.*, 29-30. What is necessary is that the impaired spouse has sustained some legally cognizable harm or injury—in *Eide*, injuries from sexual harassment in violation of the CRA—resulting in a loss of society and companionship to the unimpaired spouse. *Id.*, 29. Because "courts have consistently treated loss of consortium not as an item of damages, but as an independent cause of action," Justice BOYLE, writing for the majority, framed the issue before the Court as "not whether a cause of action [for loss of consortium] is *available* under the Civil Rights Act, but whether there is anything in the act which would *preclude* this independent cause of action." *Id.*, 29-30 (emphasis added). Stated differently, a loss of consortium claim is not a claim under the CRA at all, but a claim at common law. *Id.*, 33-34, citing Prosser & Keeton, Torts (5th ed), § 125, pp 931-934. Our Supreme Court concluded that neither the plain language of the CRA nor conventional rules of statutory construction support the argument that the Legislature intended to preclude a cause of action for loss of consortium. *Id.*, 31, 34.

In our view, the question before this Court is entirely different. Unlike the loss of consortium claim, the claim presented here is not an independent cause of action rooted in the common law. While it is true that Michigan common law recognizes a claim of *negligence* on behalf of a fetus for prenatal injury if (1) the fetus is later born alive, or (2) the fetus was viable at the time of injury, *Jarvis v Providence Hosp*,

178 Mich App 586, 591; 444 NW2d 236 (1989), the
cause of action presented in this case is not a negli-
gence claim. Rather, the claim made by Lisa Burchett,
as next friend of her son Jacob, can only be perceived
as a civil rights claim brought directly under the CRA.
In other words, we are asked to decide not whether
there is anything in the CRA that would preclude an
infant's independent cause of action for physical inju-
ries, resulting from a premature birth that was alleg-
edly caused by employment discrimination against
the infant's pregnant mother, but whether the infant
can maintain such a cause of action directly under
the CRA. We believe that the CRA cannot be so broadly
construed as to authorize such a claim.

Statutory analysis necessarily begins with the lan-
guage of the statute in question. *House Speaker v
State Administrative Bd*, 441 Mich 547, 567; 495
NW2d 539 (1993). The civil enforcement provision of
the CRA provides:

> A person alleging a violation of this act may bring a civil
> action for appropriate injunctive relief or damages, or both.
> [MCL 37.2801(1); MSA 3.548(801)(1).]

Although remedial statutes are to be liberally con-
strued to suppress the evil and advance the remedy,
*Eide, supra*, 34, we are not convinced that the Legis-
lature intended to allow an infant to pursue a cause
of action for injuries that the infant has incurred as a
result of a civil rights violation inflicted upon the
infant's mother, irrespective of whether the infant has
alleged that prenatal or postnatal injuries were
incurred as a result of the civil rights violation.

Enacted by the Michigan Legislature in 1976 to supplant the Fair Employment Practices Act, the CRA prohibits discrimination based on sex, race, national origin, religion, height, weight, or marital status in employment, housing, use of public accommodations, public service, and educational facilities. With respect to discrimination in employment, the CRA provides:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system. [MCL 37.2202;     MSA 3.548(202).]

In our view, when this portion of the CRA is read with the civil enforcement provision of the act, we are compelled to conclude that the Legislature intended to authorize only the person whose civil rights were violated to bring a cause of action under the CRA. Because plaintiff does not claim that defendant violated Jacob's civil rights but, rather, alleges that Jacob suffered damages as a result of the violation of the civil rights of Jacob's mother, we conclude

that Jacob cannot maintain a cause of action *directly* under the CRA.

Plaintiff next argues that Jacob should be allowed to maintain a cause of action under the HCRA. However, the HCRA has the same purposes and goals as the CRA, and this Court has held that claims under the HCRA should be treated similarly to those under the CRA. *Milnikel v Mercy-Memorial Medical Center, Inc*, 183 Mich App 221, 223-224; 454 NW2d 132 (1989). Further, the civil enforcement provision of the HCRA is identical to that of the CRA. See MCL 37.1606(1); MSA 3.550(606)(1). Therefore, for the reasons set forth above, we likewise decline to interpret the HCRA as authorizing Jacob's claim.

Plaintiff also argues that Jacob should be allowed to maintain a cause of action under the WPA. Although the WPA and the civil rights acts do not share identical purposes and goals—the WPA is designed to protect the public by protecting employees who report violations or suspected violations of the law to a public body, *Dolan v Continental Airlines*, 454 Mich 373, 378; 563 NW2d 23 (1997)—case law nonetheless supports the conclusion that the WPA, the CRA, and the HCRA deserve like treatment. See *Stewart v Fairlane Community Mental Health Centre (On Remand)*, 225 Mich App 410, 421; 571 NW2d 542 (1997); *Anzaldua v Band*, 216 Mich App 561, 580-581; 550 NW2d 544 (1996). Further, the civil enforcement provision of the WPA is substantively the same as those of both the CRA and the HCRA. See MCL 15.362; MSA 17.428(2). Accordingly, for the reasons discussed above, we are also satisfied that the Legislature, by its adoption of the WPA, did not intend to establish a cause of action for a person other than the person against whom a

violation of the WPA was directed. Because the alleged violation of the WPA in this case was directed at Jacob's mother and not Jacob, we conclude that Jacob cannot maintain a cause of action against defendant under the statutory scheme established in the WPA.

In sum, a court's decision regarding whether a statute creates a private right of action must be consistent with legislative intent while furthering the Legislature's purpose in enacting the statute. See *Gardner v Wood*, 429 Mich 290, 301; 414 NW2d 706 (1987). We conclude that the Legislature, by its adoption of the CRA, the HCRA, and the WPA did not intend to create the private right of action brought in this case by Lisa Burchett, as next friend of her son Jacob. Further, because these areas of law have been so extensively addressed by the Legislature, we are not prepared to recognize a new derivative cause of action in the area of civil rights or the WPA for prenatal injuries allegedly inflicted on the child of the person whose rights were violated. Such recognition is best left to the Legislature, if it is so inclined.

Accordingly, the trial court did not err in granting defendant's motion for summary disposition with respect to Jacob's claims.

Affirmed.

SAWYER, J., concurred.

NEFF, P.J., (*concurring in part and dissenting in part*). I concur with the majority that the trial court properly granted defendant's motion for summary disposition with respect to plaintiff's attempt to seek redress on Jacob's behalf under the Whistleblowers'

Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.* However, I would hold that plaintiff is entitled to proceed under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, and write separately to address the issue of derivative liability, which, because of the unique relationship between an unborn child and its mother, and the particular allegations set forth in plaintiff's complaint, is critical to the resolution of this case.

Although the concept of derivative liability is not always clearly articulated, it generally refers to a claim in which the plaintiff seeks damages for a wrong done to the plaintiff that is proximately caused by a wrong done to another. Generally, the inquiry whether a claim is "derivative" focuses not on how the injury occurred but on whether the claimed damages are based on the plaintiff's own injury, or that of another.

A common example of derivative liability is that of loss of consortium, which cannot exist without a prior injury to a spouse. See *Berryman v Kmart Corp*, 193 Mich App 88, 94; 483 NW2d 642 (1992). The alleged damages are separate and distinct from any damages to the physically injured spouse, yet they are dependent both legally and causally on the latter. Our Supreme Court has recognized that a claim for loss of consortium is derivative "but only in the sense that it does not arise at all unless the other, impaired spouse has sustained some legally cognizable harm or injury," and treats such a claim not as an item of damages, but as a separate cause of action.

*Eide v Kelsey-Hayes Co*, 431 Mich 26, 29; 427 NW2d 488 (1988).

The facts alleged in the present case do not fit neatly into a recognized category. Unlike a loss of consortium claim, plaintiff's complaint on Jacob's behalf does not seek compensation for damages suffered by or on account of an injury to plaintiff. Neither is Jacob a mere assignee of plaintiff's cause of action. Rather, plaintiff in her representative capacity seeks to recover for various injuries allegedly sustained by Jacob as a result of statutory violations involved in the termination of plaintiff's employment. Plaintiff alleges that defendant's violation of the CRA and HCRA resulted in injuries and damages to both plaintiff and Jacob and gave rise to two separate and distinct claims. Viewed in this light, Jacob's independent claim is not truly derivative because it is based on his own separate and distinct injuries, not those of plaintiff.

However, Jacob's claim is not entirely independent. This is not a situation where, for example, an unborn child is injured by a violent blow to the mother's abdomen, or where a mother and her unborn child are both injured simultaneously by breathing toxic fumes. See, e.g., *Hitachi Chemical Electro-Products Inc v Gurley*, 219 Ga App 675; 466 SE2d 867 (1995); *Ransburg Industries v Brown*, 659 NE2d 1081 (Ind App, 1995). In these examples, the injury to the unborn child is direct. In contrast, the claimed injury to Jacob allegedly flowed, both temporally and causally, from the alleged injuries to plaintiff caused by defendant's alleged statutory violations. That is, defendant caused no direct physical harm to Jacob in utero; rather, defendant's alleged statutory violations

caused plaintiff to suffer stress which, in turn, allegedly caused Jacob's premature birth and resultant injuries. Jacob's injuries allegedly would not have existed absent plaintiff's status as defendant's employee; therefore, plaintiff's action on Jacob's behalf "derives" from her own injury. Accordingly, Jacob's claim is independent insofar as it seeks redress for his own injuries, but is also derivative because it depends on plaintiff's status as defendant's employee and defendant's alleged violation of the CRA and the HCRA.

Regardless of the term used to describe it, whether a cause of action exists under these circumstances rests on the issue of duty. See *Heurtebise v Reliable Business Computers, Inc,* 452 Mich 405, 426; 550 NW2d 243 (1996) (as a general rule, "where a statute imposes upon a person a specific duty for the protection or benefit of others, neglect or refusal to perform the duty creates a liability for any injury or detriment caused by such neglect or refusal, if the injury or hurt is of the kind which the statute was intended to prevent"). If plaintiff's claim on Jacob's behalf were purely derivative, then the alleged violation of defendant's statutory duties to plaintiff would support the claim on Jacob's behalf without regard to whether defendant owed any duty to Jacob. On the other hand, if the claim on Jacob's behalf were entirely independent, then defendant must be shown to have a duty to Jacob as well as to plaintiff, his mother. As previously stated, the unique facts presented here do not fit precisely into either category.

In *Eide, supra,* the Supreme Court held that nothing in the CRA precludes a derivative cause of action for loss of consortium. *Id.* at 30. The Court stated that

the comprehensive scheme of the CRA must be liberally construed "to suppress the evil and advance the remedy." *Id.* at 34. The Court further noted that the opening clause of the civil enforcement provision of the CRA, "[a] person alleging a violation of this act . . . . ," should be read to include claims by nonemployees such as those for loss of consortium. MCL 37.2801(1); MSA 3.548(801)(1); *Eide, supra* at 34-35. I believe a similar result is required here. Using the analysis set forth by the Supreme Court in *Eide,* I find nothing in the CRA that would preclude this claim—which is in a sense both derivative and independent—from proceeding.

I would likewise find that summary disposition was erroneously granted regarding plaintiff's claim on Jacob's behalf under the HCRA. See *Milnikel v Mercy-Memorial Medical Center, Inc,* 183 Mich App 221, 223-224; 454 NW2d 132 (1989) (holding that, in the absence of any indication of legislative intent to the contrary, a claim of loss of consortium is not precluded by the HCRA).

I recognize that plaintiff may have significant problems establishing that defendant's alleged violations of the CRA and the HCRA proximately caused any of Jacob's injuries. Nonetheless, on the basis of the allegations contained in plaintiff's complaint, I conclude that plaintiff should be permitted to proceed under these two statutes. Accordingly, I would reverse the trial court's grant of summary disposition regarding counts II and III of plaintiff's complaint.