SAFIEDINE v CITY OF FERNDALE

Docket No. 272518. Submitted November 15, 2007, at Detroit. Decided April 1, 2008, at 9:20 a.m. Leave to appeal sought.

Jamal Safiedine, JSC Corporation, MTK Family Investment, and MTK Family Investment, LLC, brought an action in the Oakland Circuit Court against the city of Ferndale, seeking damages for alleged discrimination based on national origin, race, and religion. The defendant moved for summary disposition of the claims brought by the corporate defendants on the ground that the antidiscrimination provisions of the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, apply to natural persons (individuals) only, not to juridical persons such as corporations. The court, Deborah G. Tyner, J., granted the motion and dismissed the corporate plaintiffs. The corporate plaintiffs appealed by leave granted.

The Court of Appeals *held*:

The substantive antidiscrimination provisions of the CRA that grant rights and protections apply only to natural, not juridical, persons. The antidiscrimination provisions of § 302 of the CRA, MCL 37.2302, refer to the denial of a public service or accommodation to an "individual," not to a "person" as that term is defined in MCL 37.2103(g). The ordinary meaning of an individual is a "human being," not a corporation or a partnership. A reading of the entire CRA makes plain that the act grants protection from discrimination based on characteristics that are peculiarly "human" and that cannot be reasonably applied to juridical persons.

Affirmed.

CIVIL RIGHTS — ANTIDISCRIMINATION PROVISIONS — NATURAL PERSONS — JURIDICAL PERSONS.

The Civil Rights Act grants protection from discrimination that is based on characteristics that are peculiarly human and that cannot be reasonably applied to juridical persons such as corporations and partnerships; the substantive antidiscrimination provisions of the act apply only to natural, not juridical, persons (MCL 37.2302).

*Chisholm, Shuttie & Wilson* (by *Edward A. Shuttie*) and *Gordon I. Berris* for JSC Corporation, MTK Family Investment, and MTK Family Investment, LLC.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Joseph Nimako* and *T. Joseph Seward*), for the defendant.

Before: SAAD, P.J., and JANSEN and BECKERING, JJ.

SAAD, P.J. Plaintiffs, JSC Corporation, MTK Family Investment, and MTK Family Investment, LLC (collectively, the corporate plaintiffs), appeal by leave granted the trial court's grant of summary disposition to defendant, city of Ferndale. For the reasons set forth below, we affirm.[1]

### I. NATURE OF THE CASE

This appeal by the corporate plaintiffs raises an issue of first impression under Michigan's primary civil rights law: Do the antidiscrimination provisions of the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, protect only natural persons, and not juridical persons such as corporations?[2] In other words, do the rights and protections of the CRA extend to juristic persons or only to people? As we will explain below, though the specific words in the definitional sections of the CRA allow for competing arguments, the overriding purpose of the act, and the specific language that grants substantive rights, compel our holding that the act's protections apply only to natural persons.

The essential purpose and express language of Michigan's comprehensive civil rights law is to protect

---

[1] Plaintiff Jamal Safiedine is not a party to this appeal, and his claims against Ferndale remain pending in the trial court.

[2] Clearly, the CRA's mandate not to discriminate applies to juridical persons, corporations.

people. For example, in the critically important field of employment discrimination, the mandate of the law is that irrelevant characteristics such as age, race, sex, and marital status should not make a difference in hiring and firing decisions. Were we to extend these protections to juridical persons, this would constitute an unwarranted expansion of the CRA. When the act says that individuals are to be protected from discrimination based on race, sex, and marital status, it grants protection to natural persons on the basis of these peculiarly and exclusively human characteristics.[3]

## II. FACTS

This case arises out of an incident at a gasoline station in the city of Ferndale. According to plaintiffs' complaint, Jamal Safiedine, whose individual claim remains pending in circuit court, manages the station. JSC Corporation owns the station, and MTK Family Investment and MTK Family Investment, LLC, own the real estate and structures. These corporate plaintiffs are owned and operated by members of Safiedine's family. Plaintiffs assert that, on April 14, 2005, a Ferndale police officer made discriminatory comments to Safiedine and dissuaded customers from patronizing the station. According to plaintiffs' complaint, the essence here is that the city of Ferndale was trying to chase away business because Jamal Safiedine and his father are "individuals of Arabic national origin, Is-

---

[3] This analysis is solely for the purpose of determining if corporations are granted these protections. Such protection could not be granted to corporations unless the Legislature intended to anthropomorphize juridical persons, for purposes of the civil rights laws. There is nothing in the CRA to support this interpretation. We do not reach the question whether business entities, such as corporations, may find protection under Michigan laws if they are treated unfairly, but we do hold that Michigan civil rights laws do not afford such rights.

lamic religion, and Arabic race." Plaintiffs mischaracter-
ize the police officer's conduct as a denial of access to
public accommodations and public services.[4] Plaintiffs
allege that defendant violated § 302 of the CRA, which
provides:

> Except where permitted by law, a person shall not:
>
> (a) Deny an individual the full and equal enjoyment of
> the goods, services, facilities, privileges, advantages, or
> accommodations of a place of public accommodation or
> public service because of religion, race, color, national
> origin, age, sex, or marital status.
>
> (b) Print, circulate, post, mail, or otherwise cause to be
> published a statement, advertisement, notice, or sign which
> indicates that the full and equal enjoyment of the goods,
> services, facilities, privileges, advantages, or accommodations
> of a place of public accommodation or public service will be
> refused, withheld from, or denied an individual because of
> religion, race, color, national origin, age, sex, or marital
> status, or that an individual's patronage of or presence at a
> place of public accommodation is objectionable, unwelcome,
> unacceptable, or undesirable because of religion, race, color,
> national origin, age, sex, or marital status. [MCL 37.2302.]

The trial court granted summary disposition to Fern-
dale pursuant to MCR 2.116(C)(8) and dismissed the
corporate plaintiffs. The trial court reasoned that § 302 of
the CRA does not afford protection to business or corpo-
rate plaintiffs, only to "individuals" who can establish
discrimination. The corporate plaintiffs now appeal.

### III. ANALYSIS

The corporate plaintiffs contend that the trial court
erred because the various definitional sections of the

---

[4] The veracity of the allegations is not an issue before us, but only the
narrow legal issue raised by the corporate plaintiffs invoking the protec-
tions of the CRA.

CRA, when read together, suggest that corporations may sue under the CRA. Specifically, the corporate plaintiffs point out that the CRA states that a "person" may bring an action for injunctive relief or damages, and that § 801 provides that "[a] *person* alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both." MCL 37.2801(1) (emphasis added). The corporate plaintiffs further reason that because MCL 37.2103(g) defines a "person" to include, among other things, a corporation, this means corporations are protected under the CRA. On the other hand, defendant says that § 302 provides that "a person shall not . . . [d]eny an *individual* the full and equal enjoyment of the goods, services . . . accommodations of a place of public accommodation or public service because of religion, race . . . ." And, defendant argues that because § 302 addresses violations against individuals only, a corporate entity, which is not an individual, cannot seek a remedy for a violation of § 302. In sum, the parties' reasoning is premised on their view of the definitional sections of the CRA, specifically, from the Legislature's use of the term "person" in § 801, in contrast to its use of the term "individual" in § 302. Yet, we do not rest our decision on the parties' differing views of these definitional sections of the CRA.[5] But, our analysis of the definitional sec-

---

[5] This question raises an issue of statutory interpretation. As our Supreme Court explained in *Bukowski v Detroit*, 478 Mich 268, 273-274; 732 NW2d 75 (2007):

> The goal of statutory interpretation is to give effect to the Legislature's intent as determined from the language of the statute. In order to accomplish this goal, this Court interprets every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage. We give the words of a statute their plain, ordinary meaning unless the Legislature employs a term of art.

tions supports our holding that the CRA's substantive antidiscrimination provisions that grant rights and protections apply only to natural, not juridical, persons.

Read together, §§ 302 and 801 present a seeming incongruity: § 302 prohibits a person from denying public accommodations or services to an *individual,* but § 801, in providing a remedy for violations of the statute, states that a *person* may bring a civil action for appropriate injunctive relief or damages. The statutory definition of "person" in the CRA includes corporations and partnerships; thus, the statutory language of § 801 suggests that these entities are entitled to sue for damages for a violation of the CRA. However, we agree with Ferndale that § 302 plainly refers to the denial of a public service or accommodation to an "individual," not a "person" as defined by § 103(g). The ordinary meaning of an individual is a "human being," and not a

---

Furthermore, this Court recently held:

This Court's goal in statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *People v Gubachy,* 272 Mich App 706, 709; 728 NW2d 891 (2006), citing *Gladych v New Family Homes, Inc,* 468 Mich 594, 597; 664 NW2d 705 (2003). *"Statutory language should be construed reasonably, keeping in mind the purpose of the act." In re McEvoy,* 267 Mich App 55, 60; 704 NW2d 78 (2005). *"In other words, the Court must consider the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the statute's purpose." Gubachy, supra* at 710, citing *People v Lawrence,* 246 Mich App 260, 265; 632 NW2d 156 (2001). In doing so, this Court considers a variety of factors and applies principles of statutory construction, but should always use common sense. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994); *Proudfoot v State Farm Mut Ins Co,* 254 Mich App 702, 708; 658 NW2d 838 (2003), rev'd in part on other grounds 469 Mich 476 (2003). [*In re Complaint of McLeodUSA Telecom Services, Inc,* 277 Mich App 602, 609; 751 NW2d 508 (2008) (emphasis added).]

corporation or partnership. See *Random House Webster's College Dictionary* (2d ed, 1997), p 664. Further, by defining "person" to include both an "individual" and a corporation or partnership, the Legislature made clear that an individual is not the same as a corporation or partnership. See § 103(g). And, although defendant's reading of the definitional sections is more plausible than plaintiffs' interpretation, this definitional language nonetheless presents the conundrum of whether § 801 authorizes a corporation to sue for damages for a violation of § 302, when § 302 refers only to violations directed at an individual.

To resolve this apparent incongruity, we consider " 'the object of the statute and the harm it is designed to remedy,' " and the interests protected in order to " 'apply a reasonable construction that best accomplishes the statute's purpose.' "[6] The primary purpose of this civil rights legislation is to protect people, i.e., individuals, from discriminatory conduct based on characteristics peculiar to individuals: race, sex, age, national origin, marital status, and so forth. Clearly, the CRA seeks to ensure that *people* are not discriminated against because of these peculiarly "human" characteristics. Such characteristics are inherently inapplicable to corporate or juridical entities. Thus, when describing the prohibited conduct, the CRA plainly references individuals, i.e., people, and grants protection only to human beings, and not inanimate organizations.[7]

---

[6] *McLeodUSA, supra* at 609 (citation omitted).

[7] We acknowledge that the CRA is not consistent in its use of the terms "person" and "individual" with regard to defining violations. For example, § 202(1)(a) provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment . . . because of religion, race, color, national origin, age, sex, height, weight, or marital status," but § 202(1)(c) provides that an employer shall not "[s]egregate, classify, or otherwise

Every article of the CRA, from the article on employ-ment, through and including the article invoked by the corporate plaintiffs, public accommodations, makes clear, by explicit language used in granting rights, that these statutory rights and protections are afforded to natural, not juridical persons. Article 1, General Provi-sions, MCL 37.2102(1) provides:

> The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

A reading of the entire CRA makes plain that it grants protection from discrimination based on characteristics that cannot be reasonably applied to juridical persons. Article 2, Employers, Employment Agencies, and Labor Organizations, forbids employers from making deci-sions on hiring, firing, compensation, or other terms of employment "because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1). It also forbids employment agencies and labor organizations from utilizing discriminatory prac-tices "because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2203; MCL 37.2204. Article 3 of the CRA, Public

---

discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system." MCL 37.2202(1)(a) and (c). Similarly, § 402(a) uses the term "individual" in prohibiting certain forms of educational discrimination based on religion, race, and so forth, whereas § 402(c) uses the term "person" in prohibiting other forms. MCL 37.2402(a) and (c). These occasional uses of the term "person" need not cause confusion. As we point out throughout this opinion, the concept of discrimination based on inherently *human* characteristics has no meaning when applied to organizations.

Accommodations and Services, prohibits the denial of
"the full and equal enjoyment of the goods, services,
facilities, privileges, advantages, or accommodations of
a place of public accommodation or public service be-
cause of religion, race, color, national origin, age, sex, or
marital status." MCL 37.2302(a). Article 4, Educational
Institutions, bars educational institutions from employ-
ing discriminatory practices based on the same list of
characteristics. MCL 37.2402. Likewise, article 5, Hous-
ing, prohibits practices that would deny housing or
other real estate opportunities to persons on the basis of
the same listed characteristics. MCL 37.2502; MCL
37.2504.

Fundamentally, the CRA prohibits decision makers
from using race, sex, national origin, and marital sta-
tus, among other human characteristics, as determin-
ing factors in decisions affecting the employment, edu-
cation, housing, and public accommodations of people.[8]
And, in every case, it is people whose interests are
protected, not corporations or other juridical entities.[9]

---

[8] See *Alspaugh v Comm on Law Enforcement Standards,* 246 Mich App
547, 563; 634 NW2d 161 (2001) (to prove age discrimination, the plaintiff
must prove that age was a determining factor in the alleged adverse
employment action); *Town v Michigan Bell Tel Co,* 455 Mich 688, 706;
568 NW2d 64 (1997) (a plaintiff claiming sexual discrimination must
prove that gender was a determining factor in the allegedly discrimina-
tory decision); and *Matras v Amoco Oil Co,* 424 Mich 675, 682; 385 NW2d
586 (1986) (in age-discrimination action, the plaintiff's age need not be
the only reason or the main reason for the discharge, but must be one of
the reasons that made a difference in determining whether to discharge
the person).

[9] We would not reach a different result if we labeled the corporate
plaintiffs' cause of action as derivative of Safiedine's claim. In *Burchett v
Rx Optical,* 232 Mich App 174, 181; 591 NW2d 652 (1998), the plaintiff
alleged that her employer's violations of the CRA caused mental anguish
that resulted in injury to her child during the plaintiff's pregnancy. The
child also brought an action against the defendant, and claimed that he
also was entitled to sue for damages stemming from the defendant's

Therefore, juristic persons that seek protection from the antidiscrimination provisions of the CRA do not state a cause of action under the CRA.[10]

Affirmed.

---

alleged discriminatory conduct against his mother. This Court rejected the child plaintiff's claim, and held that when the CRA refers to discriminatory conduct toward an "individual," "the Legislature intended to authorize only the person whose civil rights were violated to bring a cause of action under the CRA." *Id.* Here, this would preclude the corporate plaintiffs from maintaining a cause of action against Ferndale for alleged discrimination against Safiedine.

[10] Though we rule that corporations are not protected by the antidiscrimination provisions of the CRA, this narrow ruling should not be construed as a holding that corporations may never assert a claim under the CRA. For example, because it is not before us, we do not address the related question whether a juridical person, a corporation, may file a claim for indemnification or contribution if the corporation seeks such relief in an action in which it may be held vicariously liable under the CRA for the acts of its agents.