CARLSON v HUTZEL CORPORATION OF MICHIGAN

Docket No. 102776. Submitted February 5, 1990, at Detroit. Decided
    May 7, 1990.

Patricia Carlson and other nonunion nursing administrators for
    Hutzel Corporation of Michigan doing business as Hutzel Hos-
    pital brought an action against the hospital in the Wayne
    Circuit Court, alleging constructive discharge from employment
    in breach of their just-cause employment contracts and in
    violation of public policy. Defendant hospital laid off several
    unionized licensed practical nurses and reassigned plaintiffs,
    who were registered nurses, to jobs of performing or supervis-
    ing patient care. Plaintiffs resigned rather than accept reas-
    signment. Following the presentation of plaintiffs' case, the
    court dismissed the claim of violation of public policy. The jury
    returned a verdict for plaintiffs and the court, Charles S.
    Farmer, J., entered a judgment for plaintiffs. Defendant ap-
    pealed and plaintiffs cross appealed the dismissal of their
    public policy claim.

    The Court of Appeals held:

    1. Plaintiffs' claims are not preempted by the National Labor
    Relations Act.

    2. Defendant's unilateral change of a written policy state-
    ment to provide for binding arbitration in cases of disputes over
    discharge of employees was effective upon notice to employees
    and did not require the assent of the employees to become part
    of the employment contract. Thus, plaintiffs should have sub-
    mitted their claims to arbitration.

    Reversed.

1. CONFLICT OF LAWS — PREEMPTION — LABOR RELATIONS.

    State law is not preempted by the National Labor Relations Act
    where the conduct at issue is of only peripheral concern to the
    federal law or touches interests deeply rooted in local feeling

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 922, 940, 1727, 1830,
    1894-1896, 2003.

See the Index to Annotations under Arbitration and Award; Dis-
    charge from Employment or Office; Labor and Employment; Pre-
    emption.

and responsibility; in determining whether state law is preempted by the National Labor Relations Act, the court should balance the state's interest in regulating or promoting a remedy for the conduct against the intrusion into the National Labor Relations Board's jurisdiction and the risk that the state's determination will be inconsistent with provisions of the National Labor Relations Act.

2. LABOR RELATIONS — POLICY STATEMENTS — UNILATERAL CHANGES.
Where policy statements by an employer give rise to enforceable contract rights of employees without mutual consent, an em-ployer may unilaterally change his policy and it will be effective upon notice to the employees.

*Mueckenheim & Mueckenheim, P.C.* (by *Robert C. Mueckenheim*), for plaintiffs.

*Dykema Gossett* (by *Charles C. DeWitt, Terrence E. Haggerty* and *Susan E. Mason*), for defendant.

Before: SULLIVAN, P.J., and DOCTOROFF and J. W. FITZGERALD,* JJ.

SULLIVAN, P.J. This is a wrongful discharge case. Plaintiffs were nonunion nursing administrators at defendant Hutzel Hospital. The only claims pertinent to this appeal are plaintiffs' claims that defendant constructively discharged them in breach of their alleged just-cause employment contracts and in violation of public policy. Only the former claim was submitted to the jury, which returned verdicts in favor of plaintiffs. The latter claim was dismissed by the trial court on defendant's motion for a directed verdict following plaintiffs' case in chief. Defendant now appeals, raising several issues. We reverse the jury verdicts because we conclude that the grievance and arbitration procedure was a part of plaintiffs' employment contract and, as such, was plaintiffs' sole

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

remedy. Because of our resolution of that issue, we need not reach plaintiffs' issues on cross appeal.

Defendant hospital was experiencing severe financial problems in 1983. To help alleviate these problems to some extent, Frank Iacobell, president and chief executive officer at defendant hospital, devised a plan whereby several unionized licensed practical nurses would be laid off. In turn, the nursing administrators and educators who were registered nurses, including plaintiffs, would be assigned to work on hospital floors either caring for patients or overseeing patient care. Plaintiffs resigned rather than implement what they believed to be Iacobell's plan because they did not feel competent to care for patients.[1]

I

The first issue raised by defendant is whether plaintiffs' claims are preempted by the National Labor Relations Act, 29 USC 151 *et seq.* We conclude that they are not.

Defendant argues that plaintiffs' claims are preempted because they concern an activity that is actually or arguably protected or prohibited by the NLRA. *San Diego Building Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959). However, if the conduct at issue "is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility," *Belknap, Inc v Hale,* 463 US 491, 498; 103 S Ct 3172; 77 L Ed 2d 798 (1983), then the state law claims survive. See also 359 US 243-244. "The court balances the state's interest in regulat-

---

[1] The evidence presented at trial with regard to what Iacobell's plan actually was and the reason plaintiffs resigned was conflicting. However, for the purpose of the issues we address on appeal, it is not necessary to note and explain the conflicts. Our brief statement of facts is sufficient.

ing or promoting a remedy for the conduct against the intrusion in the NLRB's jurisdiction and the risk that the state's determination will be inconsistent with provisions of the NLRA." *Bullock v Automobile Club of Michigan,* 432 Mich 472, 493; 444 NW2d 114 (1989), reh den 433 Mich 1201 (1989). Moreover, in *Sears, Roebuck & Co v Carpenters,* 436 US 180, 197; 98 S Ct 1745; 56 L Ed 2d 209 (1978), the United States Supreme Court announced the following focus for a preemption analysis:

> The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

Here, even though defendant's conduct is arguably prohibited by the NLRA, it nevertheless can be challenged in state court to the extent that it forms the basis of plaintiffs' claims. Plaintiffs' breach of contract claim involves a significant state interest because this state has a substantial interest in adjudicating contractual disputes arising within its jurisdiction. See *Belknap,* 463 US 511-512, and *Roberts v Automobile Club of Michigan,* 138 Mich App 488, 497; 360 NW2d 224 (1984), lv den 424 Mich 867 (1986), cert den sub nom *Automobile Club of Michigan v Roberts,* 479 US 889; 107 S Ct 289; 93 L Ed 2d 263 (1986). Furthermore, because plaintiffs' public policy claim alleges

that defendant's conduct violated Michigan public policy and threatened the health, safety and welfare of patients at defendant hospital, that claim also concerns a significant state interest.

On the other side of the scale, we note that exercise of this state's jurisdiction would not interfere with the jurisdiction of the NLRB. We so conclude because the controversy presented to the state court was different from that which might have been, but was not, presented to the NLRB. Plaintiffs' breach of contract claim required the jury to determine whether plaintiffs' employment contract with defendant provided that they could be discharged only for just cause, whether defendant had just cause to discharge plaintiffs and whether defendant made plaintiffs' working conditions so intolerable that they justifiably resigned. See, e.g., *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980), and *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 796; 369 NW2d 223 (1985). Plaintiffs' public policy claim, had it gone to the jury, would have required the jury to determine whether defendant's conduct violated the public policy of this state. On the other hand, the controversy which could have been presented to the NLRB under the NLRA would have required the NLRB to determine whether the act of replacing laid-off union employees with their nonunion supervisors was an unfair labor practice. In other words, the issue in the state law controversy was not whether defendant's conduct was an unfair labor practice, the unfair labor practice having to do with the fact that the laid-off LPNs were unionized but, rather, was whether defendant's conduct violated an alleged employment contract or public policy, which issue is unrelated to the fact that the LPNs were

unionized. Therefore, we conclude, plaintiffs' claims were not preempted by federal law.

II

The second issue defendant raises on appeal is whether an employer can unilaterally change a written policy statement to provide for a binding arbitration procedure without having first obtained the consent of the existing employees to whom the procedure applies. We answer in the affirmative. Therefore, plaintiffs' wrongful discharge claims were barred because plaintiffs failed to use the arbitration procedure. The trial court thus erred by failing to grant defendant's motion for accelerated judgment on this basis. (Prior to trial, defendant had moved for accelerated judgment under GCR 1963, 116.1[2].)

In *Toussaint, supra,* our Supreme Court held that "an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." *Id.,* p 610. See also *id.,* pp 598-599, 613, 614-615, 618-619, 620-621. Although those rights are enforceable in contract, they do not necessarily arise under general contract principles. As the *Toussaint* Court explained, once an employer establishes personnel policies or procedures and makes them known to employees, the employment relationship is presumably enhanced. Preemployment negotiations need not take place. Nor do the parties' minds have to meet on the subject. It is enough that the employer opted to create an environment in which the employee believes that the personnel policies and practices, whatever they may be, are "established and official at any given time, purport to be fair, and are applied consistently and uniformly to each

employee. The employer has then created a situation 'instinct with an obligation.'" *Toussaint, supra,* p 613. The policy statements can give rise to contractual rights even though the parties did not mutually agree that the policy statements would create contractual rights in the employee. *Toussaint, supra,* pp 613-615.

Moreover, our Supreme Court recently held that, when contract rights have arisen outside the operation of normal contract principles, the application of strict rules of contractual modification may not be appropriate. *In re Certified Question,* 432 Mich 438, 447-448; 443 NW2d 112 (1989). In *In re Certified Question,* the plaintiff argued that the employer's attempt to change an existing discharge-for-cause policy to an at-will policy was no more than a proposal for modification of the contract for which mutual assent was required. Our Supreme Court rejected this argument because the contractual obligation which the plaintiff argued may not be modified without mutual assent could have arisen without mutual assent under a *Toussaint* theory. Under *Toussaint,* written policies are enforceable because of the benefit the employer derives by establishing such policies. When the employer changes its discharge-for-cause policy to one of employment at will, the employer's benefit is correspondingly extinguished, as is the rationale for the court's enforcement of the discharge-for-cause policy. *In re Certified Question, supra,* pp 447, 453-454. Therefore, the *In re Certified Question* Court held, an employer can unilaterally change a written discharge-for-cause policy to one of termination at will, provided the employer gives affected employees reasonable notice of the policy change. *Id.,* p 441.

An employer can provide a procedure for resolu-

·tion of disputes concerning the discharge of employees. *Toussaint, supra,* p 624; *Dahlman v Oakland University,* 172 Mich App 502, 505; 432 NW2d 304 (1988), lv den 431 Mich 911 (1988). Defendant herein provided for such a procedure by way of a written supplement amending the previously issued employee manual. This procedure was a part of the employment contract of employees hired after the effective date of the procedure by virtue of the fact that it was included in the employee manual. Mutual assent was not necessary. See, e.g., *Dahlman, supra,* p 505, and *Vander Toorn v Grand Rapids,* 132 Mich App 590, 598; 348 NW2d 697 (1984), lv den 424 Mich 886 (1986). Under the reasoning of *In re Certified Question,* it also became a term of employment of existing employees as soon as they received notice of the change. Mutual assent was not required.[2] Therefore, the trial court erred by failing to grant defendant's motion for accelerated judgment. We therefore reverse the jury verdicts which were rendered in favor of plaintiffs.

Reversed.

---

[2] We agree with the trial court that the arbitration procedure was mandatory notwithstanding the fact that the court ultimately sent the issue to the jury and the jury found that the plaintiffs did not have to follow the procedure.