Karen SMITH, Plaintiff,

v.

**CHRYSLER FINANCIAL CORPORA-TION, Chrysler Corporation, James Kozik and Allan Ronquillo, jointly and severally, Defendants.**

No. 97–CV–60309–AA.

United States District Court,
E.D. Michigan,
Southern Division.

May 30, 2000.

Michael C. Curhan, Lipson, Neilson, Jacobs & Cole, PC, Troy, MI, for plaintiff.

Kenneth C. Hortop, Chrysler Motors Corporation, Auburn Hills, MI, Elizabeth Hardy, Keinbaum, Opperwall, Hardy & Pelton, PLC, Birmingham, MI, for defendants Chrysler Financial Corp., Chrysler Corp., and Allan Ronquillo.

Rae Lee Chabot, Plunkett & Cooney, PC, Detroit, MI, for defendant James Kozik.

*OPINION AND ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ONLY, AND; DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

STEEH, District Judge.

Defendants Chrysler Financial Corporation ("CFC") and Chrysler Corporation move to compel arbitration and for summary judgment. Plaintiff Karen Smith moves for partial summary judgment as to liability only. For the reasons set forth below, defendants CFC's and Chrysler's motion to compel arbitration will be DENIED. Plaintiff's motion for partial summary judgment as to liability only will be DENIED. CFC's and Chrysler's motions for summary judgment will be DENIED.

I.

*Background*

Plaintiff Karen Smith filed a First Amended Complaint on November 12, 1999 alleging she and Jessica Framer were employed by defendant CFC as parlale-

gals, and were supervised by CFC's then Assistant General Counsel James Kozik. Plaintiff alleges Kozik made repeated sexual advances and comments to Farmer. Plaintiff alleges that, once others reported Kozik's misconduct to CFC, Kozik retaliated against her by recommending that she receive only marginal pay raises, and by denying her certain performance reviews. Plaintiff alleges she thereafter filed a confidential sexual harassment complaint with CFC's Sexual Harassment Committee on August 12, 1996, which determined after an internal investigation that there was "reason to believe" Kozik had committed sexual harassment. Plaintiff initially filed a sex discrimination lawsuit in state court on October 15, 1996. Six days later, on October 21, 1996, she was removed from her CFC paralegal position by CFC's then General Counsel Allan Ronquillo and was transferred to a non-paralegal position away from CFC Headquarters. Plaintiff alleges she has since been denied opportunities to apply for any CFC paralegal positions by current CFC General Counsel Christopher Taravella. Smith alleges hostile work environment sexual harassment (Count I) and retaliation and reprisal (Count II), each in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

## II.

### *Motion to Compel Arbitration*

Defendants CFC and Chrysler seek to compel arbitration of plaintiff's claims pursuant to CFC's and Chrysler's Employee Dispute Resolution Process ("EDRP"). An EDRP pamphlet was mailed to 18,000 of the defendants' non-union employees. The pamphlet reads in part:

INTRODUCTION TO THE PROCESS

This brochure explains how the Employee Dispute Resolution Process works. Please take time to read the material. IT APPLIES TO YOU. It will govern all future legal disputes between you and Chrysler that are covered under the Process. You may obtain a copy of the Process from your local Personnel Office . . . . .

The Employee Dispute Resolution Process (EDRP) is a method by which all U.S. non-bargaining unit employees at Chrysler Corporation and Chrysler Financial Corporation may resolve employment disputes in a fair, timely and impartial manner. If a dispute cannot be resolved informally, the EDRP provides the following levels of review:

* A Local Review

* A Corporate Review

* Final and Binding Arbitration

The EDRP covers all legal issues relating to:

* Permanent Separation of Employment

* Layoff

* Demotion (Salary Band Reduction)

* Handicap Accommodation

* Sexual Harassment

Chrysler's Sexual Harassment Policy (Policy 3–6) provides an alternative method for resolving sexual harassment allegations. If an employee attempts to resolve an allegation of sexual harassment under Policy 3–6, he or she is not required to proceed under the Local Review or Corporate Review levels of this process. If an employee wants to pursue the allegation beyond a Policy 3–6 investigation, he or she must pursue arbitration under this Process . . . . .

ARBITRATION: If the dispute is not resolved at the corporate level, the employee may submit the EDRP Form to the American Arbitration Association (AAA), within 15 days of receipt of the Corporate Response.

The pamphlet mailing was accompanied by a letter from Chrysler's Vice President of Corporate Personnel Kathy Oswald:

Effective June 1, 1995, Chrysler is introducing a new process designed to resolve employment disputes in a fair, timely, and impartial manner . . . . .

Since communication is a key ingredient in resolving and often preventing disputes, you are still expected and encouraged to resolve disputes through informal supervisory channels. When a resolution cannot be reached through such means, you may now seek further review through the EDRP. The enclosed pamphlet describes the EDRP in detail. Please take a moment to become familiar with the process. If you have any questions regarding the EDRP, please contact your local Personnel Representative.

Plaintiff concedes that she received both the EDRP pamphlet and May 15, 1995 letter.

Plaintiff did not, however, obtain a copy of the Process from her Personnel Office [1]. This Process, or "EDRP ARBITRATION PROCEDURE", reads in part:

> Chrysler reserves the right to amend, modify, suspend, or terminate all or part of this EDRP at any time in its sole discretion. This procedure may cover any employment dispute mutually agreed to by the employee and his/her management, with final concurrence by the manager of the Workforce Diversity and Economic Equity Office.

Pursuant to 9 U.S.C. § 2 of the Federal Arbitration Act ("FAA"), generally applicable state law defenses may be applied to invalidate an arbitration agreement governing by the FAA, but "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration agreements." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (finding Montana statute making arbitration contracts unenforceable unless notice of arbitration is "typed in underlined capital letters on the first page of the contract" was preempted by the FAA). "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Under Michigan law, an arbitration provision is unenforceable if it is not a binding contract. *See Heurtebise v. Reliable Business Computers*, 452 Mich. 405, 413, 550 N.W.2d 243 (1996); *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich.App. 118, 125, 596 N.W.2d 208 (1999) (finding "contracts providing for compulsory arbitration must, of course, meet the general rules regarding the validity of contracts."). As a general contract principle, " '[m]utuality of obligation' means that both parties to an agreement are bound or neither is bound, that is, mutuality is not present where one party is bound to perform, but not the other." *Reed v. Citizens Ins. Co. of America*, 198 Mich.App. 443, 449, 499 N.W.2d 22 (1993). Consequently, if an employment agreement contains an arbitration provision that may be unilaterally changed by the employer at any time in the employer's sole discretion, the arbitration provision is unenforceable for lack of mutuality of obligation; the unilateral right to change the arbitration provision demonstrates the employer's intent not to be contractually bound. *See Heurtebise*, 452 Mich. at 414, 550 N.W.2d 243; *Stewart v. Fairlane Community Mental Health Centre*, 225 Mich.App. 410, 420, 571 N.W.2d 542 (1997) ("We cannot conclude that an agreement or provision is mutual or binding where, as between a private employer and a nonunion employee, an employer may unilaterally amend at any time every policy contained in its employee manual.").

Under the EDRP, defendants CFC and Chrysler "reserve[d] the right to amend, modify, suspend, or terminate all or part of this EDRP at any time in its

---

**1.** Plaintiff testified she first received a copy of the Process during discovery conducted in this lawsuit.

sole discretion." Under the general contract principle requiring mutuality of obligation for a contract to be binding, the EDRP arbitration provision is not contractually enforceable as a matter of Michigan law. This same conclusion was reached by Federal District Judge Paul D. Borman in a similar case construing the same EDRP. *See Peters v. Chrysler Corporation*, No. 97–74971 (E.D.Mich. May 11, 1998). Defendants' arguments that they are entitled to unilaterally implement a contractually binding arbitration policy consistent with *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980) and *In re Certified Question*, 432 Mich. 438, 443 N.W.2d 112 (1989), recognizing the unilateral creation of just cause employment contracts, is not well taken. Under the "contract theory" prong of *Toussaint*, "[a] basic requirement of contract formation is that the parties mutually assent to be bound." *Rood v. General Dynamics Corp.*, 444 Mich. 107, 118, 507 N.W.2d 591 (1993). To determine whether mutual assent exists, Michigan applies an objective test, looking to the parties' express words and visible acts. *Id.* at 119, 507 N.W.2d 591. *See also Horn v. Cooke*, 118 Mich.App. 740, 744, 325 N.W.2d 558 (1982) ("No contract to arbitrate can arise except upon the expressed mutual assent of the parties."). There is no evidence in the record that plaintiff Smith agreed to arbitration by express words or visible acts of contractual assent. *Carlson v. Hutzel Corp. of Michigan*, 183 Mich.App. 508, 455 N.W.2d 335 (1990), relied upon by defendants, was decided prior to *Stewart* and *Rood, supra*.

 The EDRP is also not contractually enforceable because it failed to provide plaintiff with notice that she was waiving her right to adjudicate her sex discrimination claims in a judicial forum. *See Rembert*, 235 Mich.App. at 161, 596 N.W.2d

208. Adequate notice to persons who may be bound by an arbitration proceeding is a necessary element to a fair adjudication and, consequently, necessary for enforcement of an arbitration provision. *See Renny v. Port Huron Hospital*, 427 Mich. 415, 437, 398 N.W.2d 327 (1986). This adequate notice requirement is consistent with the FAA. *See Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (reasoning that an employee affirmatively "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."). Even applying a standard of contract interpretation deferential to arbitration, *Moses Cone*, 460 U.S. at 24–25, 103 S.Ct. 927, plaintiff was not adequately informed by the May 15, 1995 letter or EDRP pamphlet she received that she was trading her right to a judicial forum for arbitration.[2] *Beauchamp v. Great West Life Assurance Co.*, 918 F.Supp. 1091, 1098 (E.D.Mich.1996), relied upon by the defendants, stands for the proposition that a party who signs a contract is presumed to know its terms. Defendants do not dispute that plaintiff did not sign an acknowledgment form or other document.

The EDRP is not contractually enforceable under Michigan law. Pursuant to 9 U.S.C. § 4, defendants CFC and Chrysler are not entitled to an order requiring plaintiff to arbitrate her Title VII claims.

### III.

### *Motions for Summary Judgment*

#### A.

#### *Standard of Review*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affida-

**2.** The Court agrees with defendants that the "clear and unmistakable waiver" standard applicable to arbitration agreements contained within collective bargaining agreement is not applicable here. *See Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80,

119 S.Ct. 391, 142 L.Ed.2d 361 (1998). Nonetheless, in *Gilmer*, the employee signed an application wherein he agreed to arbitrate his claims. *Gilmer*, 500 U.S. at 23, 111 S.Ct. 1647.

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir.1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'r,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.,* 952 F.2d 942, 945 (6th Cir.1992).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). The nonmoving party cannot rest on its pleadings to avoid summary judgment, but must support its claims with probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B.

*Plaintiff's Motion for Summary Judgment as to Liability Only*

Plaintiff moves for summary judgment as to liability only, as to the Title VII retaliation claims only, proffering: (1) Ronquillo's and CFC Human Resource Manager Linda Rumshlag's testimony that Smith was transferred out of her CFC paralegal position on October 21, 1996 because she filed a discrimination lawsuit, and; (2) CFC Associate General Counsel Tracy Hackman's testimony that Smith has not since been considered for a paralegal position because of plaintiff's state and federal lawsuits.

Defendants counter that plaintiff has misconstrued the testimony, and assert that the reason plaintiff was reassigned and is not now eligible to occupy a paralegal position is for the protection of corporate security, to wit, defendants fear that a disgruntled plaintiff Smith will leak confidential and sensitive legal information. Defendants also assert plaintiff was transferred out of her paralegal position, and is currently ineligible for a paralegal position, consistent with her professional and ethical duty to eliminate conflicts of interest; defendants maintain plaintiff cannot properly represent her former client and employer CFC while, at the same time, she is suing them.

■ To demonstrate a prima facie case of unlawful retaliation under Title VII, the plaintiff must prove: (1) she engaged in protected activity; (2) the exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff, or subjected the plaintiff to severe or pervasive retaliatory harassment by a supervisor, and; (4) a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 793. The plaintiff then bears the burden

of demonstrating that the proffered reason was not the true reason for the employment decision. *Id.*

█ Construing the pleadings and evidence in a light most favorable to defendants CFC and Chrysler, the evidence in the record presents a sufficient disagreement as to CFC's true motivations for transferring plaintiff out of her paralegal position on October 21, 1996, and for continuing to refuse to consider her for other CFC paralegal positions that the issue of CFC's true motivation for these employment decisions must be submitted to a jury. *Winningham,* 42 F.3d at 984. The proffered testimony of Ronquillo, Rumshlag, Hackman and Taravella demonstrates, as plaintiff argues, that plaintiff was transferred out of her CFC paralegal position, and is not currently considered eligible for a CFC paralegal position, as a direct result of the sex discrimination lawsuits she filed and continues to pursue. Defendant does not dispute that filing a sex discrimination lawsuit against an employer constitutes an exercise of activity protected by Title VII. What remains to be decided by a jury, however, is whether defendant CFC retaliated against plaintiff for filing and maintaining the lawsuits, or whether CFC legitimately reasoned that plaintiff posed a potential threat to corporate security if she occupied a paralegal position while her lawsuits remained pending. The "only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury must draw, to a permissive one the jury may draw, provided that the jury finds the employer's explanation 'unworthy of belief'." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir.1994). Plaintiff now bears the burden of proving that the defendants' proffered reasons are simply unworthy of belief given plaintiff has never before leaked confidential client information, and has not threatened to leak such information. *Oldham County,* 201 F.3d at 793. Evidence in the record construed in a light most favorable to the defendants nonetheless indicates that CFC attempted, albeit briefly, to build a "firewall" between plaintiff and her access to confidential CFC information before plaintiff was transferred, lending support to the proffered legitimate reason of protecting corporate security. Construing this and other evidence in light most favorable to the defendants, the issue of CFC's true motivations remains for the jury to decide.

The court notes that the defendants' more recent argument that plaintiff was transferred due to ethical considerations is not supported by the proffered testimony; the court is not cited to any deposition testimony by Ronquillo, Rumshlag, Hackman or Taravella, or any other agent of CFC or Chrysler, who has testified to date that plaintiff was removed from her paralegal position, and is not currently eligible for a paralegal position, because plaintiff cannot ethically occupy the position as a legal professional. The issue is not whether a legitimate reason exists, but whether CFC and Chrysler relied upon a legitimate reason for their challenged employment decisions. Nonetheless, the true causal connection between plaintiff's transfer from her paralegal position and her filing of sex discrimination lawsuits, as well as the nondiscriminatory justification proffered by defendants, should be submitted to a jury. Plaintiff's motion for partial summary judgment as to liability only, as to her retaliation claims only, must therefore be denied. *Winningham,* 42 F.3d at 984.

### C.

### *Defendants' Motions for Summary Judgment*

#### i.

Defendants move for summary judgment of plaintiff's retaliation claims predating August 12, 1996—the alleged hostile work environment created by Kozik, an alleged retaliatory January 1996 perfor-

mance appraisal, and an alleged retaliatory April 4, 1996 low salary increase—arguing the court lacks subject matter jurisdiction over these claims because they are broader than the claims plaintiff made in her May 14, 1997 Charge of Discrimination submitted to the EEOC. Defendants also argue references made in plaintiff's complaint regarding comments about "African–Americans" and "physically disabled employees" are likewise outside the scope of the Charge of Discrimination.

Plaintiff's EEOC Charge of Discrimination, set forth in an EEOC form, reads:

I began employment for CFC's Legal Department in May, 1989.

I performed my job duties in an exemplary manner and regularly received merit raises based upon my performance. My supervisor was CFC's Assistant General Counsel and was responsible for my merit raises, performance reviews, job assignments and positions with CFC's Legal Department.

At various times while the Assistant General Counsel supervised me, he subjected me to demeaning and harassing remarks and behavior intended to denigrate myself and/or women in general. After I reported his conduct to CFC's General Counsel, his illegal misconduct continued and he vowed to "get rid of" and retaliate against those CFC employees he suspected reported his conduct to General Counsel.

On or about August 12, 1996, I filed a confidential sexual harassment complaint with CFC's Sexual harassment Committee pursuant to CFC's sexual harassment policy. In response to my complaint, CFC and Chrysler purportedly conducted a thorough investigation into my sexual harassment claim.

On September 16, 1996, CFC and Chrysler provided the harasser [sic] with a promotion from CFC to Chrysler's Legal Department. On October 15, 1996, I filed a lawsuit against the Defendants alleging, inter, violations of the Elliott–Larsen Civil Rights Act (EL-

CRA). On or about October 21, 1996, in response to filing a lawsuit alleging violations of the ELCRA, CFC demoted and/or involuntarily transferred me to a different, non-paralegal position at a location away from CFC's headquarters. I believe that I have been wrongfully sexually harassed, based on my sex, female, and demoted, in retaliation for reporting sexual harassment and for filing a lawsuit, in violation of Title VII of the Civil Rights Act of 1964, as amended.

As to the alleged cause of discrimination, plaintiff checked the boxes in the form titled "sex" and "retaliation". Describing the dates of discrimination, plaintiff wrote "unknown" for the "earliest" date, "ongoing" for the "latest" date, and checked the box "continuing action."

■■■■ This court enjoys jurisdiction over claims explicitly filed in the EEOC charge as well as claims that were reasonably expected to grow out of the charge. *See Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998) (citing *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544–45 (6th Cir.1991)). Construing the pleadings and evidence in a light most favorable to plaintiff Smith, plaintiff's pre-August 12, 1996 sexual harassment and retaliation claims can reasonably and fairly be read as growing out of the broad allegations set forth in her Charge of Discrimination, which begin with the date May 1989, allege subsequent misconduct and threats of retaliation, continue through to August 12, 1996 and the filing of the internal confidential sexual harassment complaint, and continue further through plaintiff's October 21, 1996 transfer from her paralegal position, all allegations consistent with an alleged "continuing action". The court need not apply a "liberal construction" applicable to *pro se* claimant's in reaching this conclusion. *See Ang,* 932 F.2d at 546. As to plaintiff's allegations in this lawsuit regarding comments made about "African–Americans" and "physically disabled employees", plaintiff is not alleg-

ing race or disability discrimination claims, and thus, the court has not improperly exercised jurisdiction over such claims. Defendants are not entitled to summary judgment based on lack of subject matter jurisdiction. *Winningham,* 42 F.3d at 984.

### ii.

Defendants move for summary judgment of plaintiff's claims pre-dating August 16, 1996 arguing any such claims are untimely because they arose more than 300 days prior to June 12, 1997, or August 16, 1996, the date the EEOC first filed plaintiff's charge with Michigan's "deferral agency" the Michigan Department of Civil Rights or, in the alternative, 300 days prior to April 23, 1997, or July 2, 1996, the date the EEOC first received plaintiff's April 22, 1997 letter.

■ Generally under 42 U.S.C. § 2000e–5(e)(1) and 42 U.S.C. § 2000e–5(c) of Title VII, no charge may be filed with the EEOC until 60 days have elapsed from the time a charge is filed with a local state agency having the authority to administer state civil rights laws that prohibit unlawful employment practices. The purpose of this 60 day deferral period is "to give States and localities an opportunity to combat discrimination free from premature federal intervention." *Equal Employment Opportunity Commission v. Commercial Office Products Co.,* 486 U.S. 107, 110–11, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) held that, consistent with this deferral period, a complainant must either file a charge with the state agency, or have the EEOC refer the charge to the state agency, within 240 days of the alleged discriminatory event. *See Commercial Office Products,* 486 U.S. at 111, 108 S.Ct. 1666 (citing *Mohasco,* 447 U.S. at 814 n. 16, 100 S.Ct. 2486 (1980)). However, if the EEOC enters into work sharing agreements with a state agency authorized to enforce state employment discrimination laws, and the state waives the Title VII statutory 60 day

deferral period, the state's investigation is considered "terminated", and a claimant may file a discrimination charge directly with the EEOC within 300 days after the alleged discriminatory conduct—even if the claimant has not filed a timely state charge. *Commercial Office Products,* 486 U.S. at 124–25, 108 S.Ct. 1666. *See also Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (1987) ("In states such as Michigan, which have their own laws forbidding age discrimination, a plaintiff must file a claim of ADEA violation 'within 300 days after the alleged unlawful practice occurred.' "). Consequently, plaintiff's claims based on discriminatory conduct that occurred 300 days before the EEOC received plaintiff's April 23, 1997 Charge of Discrimination, being claims based on conduct that occurred on or after July 2, 1996, are timely as a matter of law.

■ Further, plaintiff may also pursue pre-July 2, 1996 hostile work environment and retaliation claims pursuant to the "continuing violation" doctrine. Plaintiff has produced evidence indicating Kozik made sexually hostile remarks to former co-employee Jessica Farmer within plaintiff's working environment *after* July 2, 1996, specifically, on July 25, 1996, August 13, 1996, and August 16, 1996. A confidential memo regarding harassment/fear of retaliation was allegedly submitted to CFC on August 12, 1996, and Kozik was not removed from the work environment until August 16, 1996. Otherwise time-barred unlawful discriminatory acts may be actionable if, as here, the plaintiff can establish a continuous pattern of discrimination throughout her term of employment that continued into the EEOC charge-filing period. *See Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982) ("[s]ince [the evidence] supports a finding that discriminatory acts continued throughout her period of employment, the plaintiff's action is not time barred"). *See also Hull v. Cuyahoga Valley Joint Vocational School District Board of Education,* 926 F.2d 505, 510–11 (6th Cir.1991) (stating "there are impor-

544

tant policy reasons not to require a discrimination suit be filed at the first instance of discrimination or not at all."). Defendants are not entitled to summary judgment based on the asserted untimeliness of plaintiff's claims. *Winningham*, 42 F.3d at 984.

iii.

Defendants move for summary judgment of plaintiff's claims post-dating August 16, 1996 arguing: (1) plaintiff cannot prove that she suffered an objective, material adverse employment action as a result of her transfers from the CFC paralegal position to Discount Supervisor, to Receptionist, and on to her current position as a Bankruptcy Specialist/Supervisor because plaintiff cannot prove she has lost any pay or benefits; (2) plaintiff cannot prove she suffered emotional damages after October 12, 1997 when she was promoted to the position of Bankruptcy Specialist/Supervisor, and; (3) plaintiff has not rebutted defendants' legitimates reasons for her transfer out of the paralegal position.

 On October 28, 1996, plaintiff was transferred to the position of Discount Supervisor in CFC's Troy, Michigan office, where she worked until March 1997 when she took a medical leave of absence. Upon her return to work on July 5, 1997, she was assigned a position as a Receptionist. In October 1997, plaintiff was transferred to her current position as a Bankruptcy Specialist/Supervisor. A tangible employment action includes reassignment to a position with "significantly different responsibilities." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In determining whether an employment action was materially adverse, and thus actionable, a court should consider such factors as a demotion evidenced by a decrease in wages or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices unique to the situation. *See Kocsis v. Multi–Care Mgt., Inc.*, 97 F.3d 876, 886

(6th Cir.1996) (cited in *Burlington Industries*, 524 U.S. at 761, 118 S.Ct. 2257). A plaintiff's subjective personal preferences are insufficient to prove an actionable adverse employment action. *See Brown v. Brody*, 199 F.3d 446, 455 (D.C.Cir.1999).

 Plaintiff Smith has produced evidence that her transfer from her position as a CFC paralegal to Discount Supervisor, and then to the position of Receptionist, resulted in changes a professional to clerical positions, resulted in a less distinguished titles; significantly diminished her job responsibilities, and resulted in the loss of a private office. Although plaintiff may have been required to work as a Receptionist on her return from medical leave because the Discount Supervisor position had been filled, it must be remembered that plaintiff was initially transferred to the Discount Supervisor position by CFC. The court also concludes that, in construing the evidence in a light most favorable to plaintiff, a jury could further conclude that the transfer from the CFC paralegal position to the current Bankruptcy Specialist/Supervisor position likewise represents a tangible adverse employment action accompanied by objective loss. The increase in actual and potential pay and benefits is not dispositive, especially in this unique situation involving several job transfers. *See Kocsis*, 97 F.3d at 886. The court is not prepared to find that plaintiff cannot recover post-October 1997 emotional damages solely because she now occupies a position that pays better than the paralegal position she occupied on October 27, 1996. The issue of plaintiff's damages, and the defendants mitigation of same, should be submitted to the jury.

As pointed out in Section III, B, *supra*, plaintiff Smith may rebut the proffered legitimate reasons of corporate security and potential ethical breaches by showing: (1) the reasons have no basis in fact; (2) these reasons did not actually motivate the challenged decisions, or; (3) the reasons are insufficient to motivate the transfer decision. *See Manzer*, 29 F.3d at 1084.

Defendants are not entitled to summary judgment based on the absence of an actionable adverse employment action, an inability to prove post-October 12, 1997 emotional damages, or an inability to rebut defendants' proffered reasons for the employment decisions made. *Winningham*, 42 F.3d at 984.

iv.

■ Defendants move for summary judgement of plaintiff's hostile work environment claims arguing plaintiff has not plead requisite severe and pervasive conduct, nor does plaintiff allege she was the target of Kozik's sexual advances. A hostile work environment claim requires proof that the discrimination is so severe or pervasive as to alter the conditions of the plaintiff's employment. *See Oldham County*, 201 F.3d at 790; *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (deciding issue of race discrimination). In order to prove a prima facie hostile environment claim, the plaintiff must establish five elements: (1) she is a member of the protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating hostile or offensive work environment, and; (5) the existence of employer liability. *Seidner*, 183 F.3d at 512.

In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances, including: [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris [v. Forklift Sys. Inc.]*, 510 U.S. [17,] 23, 114 S.Ct. 367, 126 L.Ed.2d 295; *Abeita v. TransAmerica*

*Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir.1998). "A recurring point" in the Supreme Court's opinions is that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' " and that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 785–86, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998) (citations omitted).

*Seidner*, 183 F.3d at 512–13. *See also Oldham County*, 201 F.3d at 790. Isolated incidents and remarks do not give rise to Title VII liability unless they are extremely serious because Title VII is not a "general civility code." *Faragher*, 524 U.S. at 781, 118 S.Ct. 2275.

■ To determine if an abusive work environment existed, the court must apply a two part totality of the circumstances test, requiring an analysis under both an objective reasonable person standard and a subjective standard. *Seidner*, 183 F.3d at 512.

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris*, 510 U.S. at 21–22, 114 S.Ct. 367. A court must review the work environment as a whole because, under certain circumstances, a hostile work environment may be proven by establishing the cumulative effect of related acts of abuse. *See Williams v. General Motors Corp.*, 187 F.3d 553, 563 (6th Cir.1999).

■ Construing the pleadings and available evidence in a light most favorable

to plaintiff Smith, the issue of whether plaintiff was subjected to an actionable sexually hostile work environment must be submitted to the jury. The fact the Kozik's alleged sexual comments were not directed at plaintiff is relevant to the determination of whether a objectively hostile work environment existed, but is not dispositive. *See Oldham County,* 201 F.3d at 790. *See also Jackson v. Quanex Corp.,* 191 F.3d 647, 660 (6th Cir.1999) (rejecting view that harassment, to be actionable, must be aimed at the plaintiff); *Equal Opportunity Commission v. Ohio Edison,* 7 F.3d 541 (6th Cir.1993) (Title VII prohibits discrimination against an employee who "opposes any practice" unlawful under Title VII). As determined in Section III, C, ii, *supra,* the "continuing violation" doctrine permits plaintiff to pursue her hostile work environment claims based on all of Kozik's alleged harassment, including any pre-July 2, 1996 conduct. Consistent with this determination, and reviewing plaintiff's work environment as a whole, including pre-July 2, 1996 conduct, this record does not preclude Smith's claims that Kozik's conduct in the CFC work environment went beyond simple teasing, offhand comments, or isolated incidents directed at paralegal Farmer. The court awaits full development of the work environment at trial. Defendants are not entitled to summary judgment based on plaintiff's asserted inability to prove she was subjected to a sufficiently severe or pervasive sexually hostile conduct. *Winningham,* 42 F.3d at 984.

## IV.

### *Conclusion*

For the reasons set forth above, defendants CFC's and Chrysler's motion to compel arbitration is hereby DENIED. Plaintiff Smith's motion for partial summary judgment as to liability only is hereby DENIED. Defendants CFC's and

Chrysler's motions for summary judgment are hereby DENIED.

IT IS ORDERED.